W. L. MOODY & CO. v. CITY OF GALVESTON.

Decided March 1, 1899.

**1. Taxation—Description in Assessment.**

The owner of personal property can not object to the sufficiency of the description thereof in the assessment roll where it follows a description contained in the list prepared by him and tendered to the assessor, and which was rejected by the latter because of insufficient valuation.

**2. Same.**

It is the assessor's duty under the ordinances and city charter of Galveston to place property upon the unrendered roll where the owner does not present to him a list thereof duly signed and sworn to.

**3. Same—Taxpayer's Remedy—Assessment.**

The remedy of a taxpayer, if the assessment of his property by the assessor is fraudulent or arbitrary, is a resort to the board of appraisers for a revision thereof.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Lovejoy, Sampson & Malevinsky,* for appellants.

*R. Waverly Smith,* for appellee.

JAMES, CHIEF JUSTICE.—Action by the city to recover of appellants personal judgment for taxes assessed for the year 1896. The case was tried by the court without a jury, and judgment was given in favor of the city for the sum claimed.

It appears from the evidence that appellants undertook or offered to make an assessment of personal property to the city assessor, tendering a

statement worded thus: "Credits, cash, office furniture, etc., $20,000." The assessor refused to assent to the valuation of $20,000, and declared his intention to make the valuation $200,000. Thereupon appellants went no further with the assessment, and did not sign or swear to the statement they had offered. The assessor in due time placed the same on the unrendered roll thus: "W. L. Moody & Co., credits, cash, office furniture, etc., $200,000." This, among other assessments, was referred by the assessor to the board of appraisers, and of the meeting of this body the required notice to the public was given, and appellants did not appear before it, and the valuation was approved. It also appears from the testimony that appellants had, on January 1, 1896, more of cash and solvent credits than the value of $200,000.

Appellants first advance two propositions in substance that the assessment as entered upon the assessment roll (unrendered) by the assessor against W. L. Moody & Co. was inherently defective and void, in that the description of the property did not show the character of the property and the amount of the assessment on each class of property. The roll read as follows: "Unknown. W. L. Moody & Co., credits, cash, office furniture, etc., $200,000."

There is ample evidence to show that defendants presented to the assessor, with a view to their assessment for the year 1896, an unsigned and unsworn list or statement of personal property, describing it as above, and valuing it at $20,000. The assessor refused to admit this valuation, and the property thus listed not being signed nor sworn to, he placed it upon the unrendered roll, valuing the property at $200,000. Defendants alleged that they presented to the assessor for 1896 "their assessment on the following personal property, to wit: credits, cash, office furniture and fixtures, etc., belonging to defendants, etc., amounting to $20,000." This being the form of description by which defendants presented their property for assessment, we think they can not say that the assessment is void or defective because the assessor adopted or followed it. Trust Co. v. Oak Cliff, 8 Texas Civ. App., 217; Cool. on Tax., 2 ed., p. 360.

There is no merit, in its application here, in the proposition advanced under assignment number 2 complaining of the overruling of an exception. It is that no tax can be collected to pay interest, etc., on bonds prior to their sale. The allegation in the petition was that the taxes were levied to provide for interest and sinking fund upon outstanding bonds of the city. This was not subject to demurrer.

The next propositions are under assignments 3 and 7. They are as follows: "Under the terms and provisions of the city's charter it was the duty of the assessor, if his testimony be true that there was no rendition by appellants, to enter W. L. Moody & Co.'s property on the unrendered roll by proper description, and the valuation should have been made by the board of appraisers and not by the assessor;" and further, "the assessor had no right to place the valuation upon W. L. Moody & Co.'s prop-

erty." So far as this assignment complains of the matter of description, it has been disposed of. It appearing from evidence that defendants did not render this property in the manner required by the charter and ordinances (not having presented a list signed or sworn to), it became the assessor's duty to place the property upon the unrendered roll, and in any event it was his duty to assess its value. A notice of the meeting of the board of appraisers of said city for the year 1896 was duly given as required by the ordinance. It appears that the board approved the valuation of the assessor. We conclude that the assignments are not well taken.

There is a proposition under the fourth assignment that when an assessor in raising or fixing the value of property acts fraudulently or arbitrarily, his act is voidable. There is nothing in this proposition in its reference to this case. The evidence would for that matter have authorized the court to find against such theory, and we should assume that he adopted this view of the evidence. But it is to correct just such evil that the taxpayer is secured the right to have the matter passed on by the board of appraisers and an opportunity to present his grievance there. The remedy was before such board.

The remaining assignments present the question that the judgment is against the law and the evidence, in that the undisputed evidence in the case showed that the defendants did not have on January 1, 1896, property of the character assessed, subject to assessment and not otherwise taxed, of the value of $200,000. The argument of appellant under the fifth assignment undertakes to demonstrate that the evidence indisputably shows that defendants had on that day no property at all of the character assessed, to wit: cash, credits, or furniture, subject to assessment and taxation.

We can not agree with appellee in his contention that a person is entitled to the deductions allowed by our statutes only in the event of a rendition by him in accordance with the statute. We think that when an assessor makes the assessment, if he includes property not owned by the citizen, or a greater amount thereof than is taxable, the party is not without relief. Griffin v. Heard, 78 Texas, 608; and we think that defendants were entitled to show the true condition of their taxable property of the classes in question, that is, of what it actually consisted on January 1, 1896. The trial court allowed appellants to go into that question. Laying aside the evidence tending to show defendants' contention that they should not have been taxed at all in this respect, there is evidence from which it can be found that in items of cash and credits defendants had fully the amount of the assessment, on January 1, 1896. It was shown that on April 11, 1896, appellants rendered to Dun's Commercial Agency, as a basis of credit and for rating, a detailed statement showing the firm's net worth to be $1,582,000. One of the appellants testified that the statement was approximately correct, and that it was approximately true on January 1, 1896. The statement reads:

"Assets.

| | |
|---|---|
| "Stocks and bonds, actual value...................... | $399,169.77 |
| "Bills receivable................................... | 470,306.72 |
| "Real estate in Galveston........................... | 180,000.00 |
| "Real estate in Virginia........................... | 25,000.00 |
| "Real estate outside Galveston...................... | 465,578.23 |
| "Judgments, claims, etc............................ | 92,124.43 |
| "Demand loans against cotton on hand and overdrafts ...........................$575,179.00 | |
| "Cash and sight exchange................ 167,617.00 | |
| | 742,796.00 |
| "Total assets.................................$2,374,075.00 | |

"Liabilities.

| | |
|---|---|
| "Deposits ...................................... | $497,499.72 |
| "Bills payable.................................... | 295,206.80 |
| "Firm's net worth................................ | 1,582,268.93 |
| | "$2,374,075.00" |

Upon the basis of this statement, if we deduct from the sum of $1,582,268 the value of all the real estate and stocks, we have as representing credits over $500,000, a greater value than the sum assessed. The testimony of what was worthless in these credits did not reduce this sum to the value fixed by the assessor.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.